UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN STEVENS, | CASE NO.   1:10-cv-245-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFFS'S COMPLAINT FOR FAILURE TO STATE A CLAIM |
| v. | |
| JAMES A. YATES, et al., | (ECF No. 1) |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

_____/

Plaintiff Ryan Stevens ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to jurisdiction by a Magistrate Judge. (ECF No. 6.)

Plaintiff initiated this action on February 17, 2010. Plaintiff's Complaint is currently before the Court for screening. No other parties have appeared in the action.

The Court finds that Plaintiff's Complaint fails to state a claim.

I.  **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

§ 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

II.     **SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff is a state prisoner currently confined at Pleasant Valley State Prison ("PVSP"). He brings this action alleging violations of his First Amendment right to free exercise of his religion, his Eighth Amendment right to be free from cruel and unusual punishment, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Plaintiff names the following individuals as defendants: 1) Warden Yates, 2)

Lieutenant McCoy, 3) Lieutenant Mills, 4) Sergeant Ward, 5) Lieutenant Smith, 6) D-Yard Sergeant Arrodando, 7) Correctional Officer Mendenhall, 8) Community Resources Manager WK Myers,[1] 9) Associate Warden of Central Operations K.R. Nash, 10) Correctional Officer Mendoza, 11) Muslim Chaplain Michael Salam at Avenal State Prison, 12) investigative officers known and unknown, 13) Fresno FBI, and 14) Chaplain Brian Philips.  These Defendants were employed at PVSP at the time of the incidents alleged.

Plaintiff alleges as follows:

Plaintiff is a Muslim inmate currently incarcerated at PVSP.  He alleges religious profiling by prison staff and fellow inmates at PVSP.  (Compl. at 6.)  This profiling is so extensive that the Fresno FBI participates and Muslim inmates' families have been impacted.  (Id.)  The behavior that Plaintiff has been subject to amounts to harassment and has risen to the level of a "Muslim terrorist witch hunt."  (Id.)

Staff at PVSP have searched inmates' cells and removed permissible religious property including religious CDs given to Plaintiff by the former Muslim chaplain, Defendant Salam.  (Id.)  "They" have removed inmates' clothing, pictures and books that are not banned.  (Id. at 7.) "They" have placed informants at religious services.  (Id.)  The FBI has come to PVSP to question informants and Muslim inmates.  (Id.)  There is a system in place for rewarding informants.  (Id.)  The informants are of questionable backgrounds and have dubious motivations for informing on fellow prisoners.  (Id.)  PVSP staff members who gathered information from the informants know that many of them have disciplinary problems.  (Id.)  PVSP nevertheless uses this information and passes it on to the Fresno

---

[1] Defendant Myers is also referred to as "WK Meyer".

FBI without advising the FBI that the informants may have ulterior motives. (Id.) Plaintiff cannot present evidence of this because it is confidential. (Id. at 8.)

One inmate has admitted to Muslim inmates that he advised the Marine Corps in writing that Muslim inmates (including Plaintiff) asked how to make bombs. (Compl. at 8.) He did this in the hope that the Marine Corps would provide him with an alibi and say he was wrongly convicted. (Id.) All of these events have occurred at PVSP D-Yard, which is full of emotionally and mentally unstable prisoners who are encouraged by staff to imagine accusations against Muslim inmates. (Compl. at 8.)

PVSP staff has never heard Plaintiff or any other Muslim inmates make anti-American or terrorist-friendly statements. (Compl. at 9.) Over the last three or four years, no Muslim in the D-Yard has been a problem or given any indication of having been radicalized. (Id.)

Muslims at PVSP are constantly denied their right to worship. (Compl. at 9.) They cannot worship without fear of being called "traitors" and "terrorists" or other names. (Id.) They become the subject of FBI files because of their faith. (Id.) There is a general atmosphere of hate which instills fear among Muslims, Plaintiff included. (Id.) Muslims cannot practice their faith without fear of bing harassed, threatened, labeled terrorists, or investigated by the FBI. (Id.) Muslim inmates' families have been questioned or harassed by the FBI. (Id.)

All of the named Defendants, in addition to some unknown individuals, have been involved in this scheme to make Muslim inmates ill at ease at PVSP. (Compl. at 10.)

Defendant McCoy has been a central figure in religious profiling. (Compl. at 10.) Defendant McCoy was involved in having the FBI question Plaintiff and his family, and he

has constantly questioned another inmate about Plaintiff being a Muslim. (Id.) Defendant McCoy and Defendant Arrodando have questioned another inmate about Plaintiff. (Id.) Defendant McCoy is on a Muslim witch-hunt. (Id.)

Plaintiff and others are being denied the "freedom of religion and the practice thereof." (Compl. at 11.) Plaintiff and other Muslim inmates practice their religion with the fear of being labeled terrorists and having their families questioned. (Id.) They have permissible religious items removed from their cells. (Id.) They are concerned about being put on watch-lists based on unreliable information. (Id.)

Worshiping under these conditions constitutes cruel and unusual punishment under the Eighth Amendment, and it falls short of RLUIPA standards. (Compl. at 11.) Plaintiff and other inmates at D-Yard cannot worship under these conditions; they fear retaliation. Administrative appeals on the issue have been unsuccessful.[2] PVSP staff seem to know what is in the grievances and make it unpleasant for inmates until the grievances are dropped. (Id.) Alternatively, inmates are put into Administrative Segregation or given therapy. (Id.) Plaintiff asks the Court to investigate these claims and to be taken off of all watch lists.

Plaintiff "seeks relief from administrative remedies due to fear." (Compl. at 12.)

Plaintiff provides the Court with a list of Defendant McCoy's informants. (Compl. at 12.) Defendant Salam provided Plaintiff books that were later deemed to be terrorist objects and confiscated. (Id.) Defendant Yates then allowed the confiscated books into the chapel library and on prison grounds. (Id.) Defendant Mills had items removed and

---

[2] Plaintiff attached grievances filed by other inmates, but does not attach or point to any grievances he filed.

-5-

taken to the investigations unit. He led a "watch investigation." (Id.) Defendant Ward had Plaintiff's cell searched because of what even he admitted was "bogus information." (Id. at 12-13.) Defendant Smith of the investigations unit and Sargent Arrodando of D-Yard refused Muslim inmates access to the chapel and called Muslim inmates names. (Id.) Defendants Mendenhall and Mendoza searched Plaintiff's cell for CDs and removed permissible religious items which Plaintiff had a chrono to keep. (Id.) Defendants Philips and Myers denied religious dietary laws "per court order." (Id.)

Plaintiff also has been denied access to chapel for Friday required worship, and he has been deprived of meals authorized by court order. (Compl. at 14.) Plaintiff and others are continually denied access to the prison chapel. (Id. at 15.) Muslim inmates were denied access on December 24, 2009, January 1, 2010, on January 22, 2010, and many more days. (Id.) Muslim inmates were denied "Religious Eids". (Id.) All religious items removed from inmates' cells are returned to sender. (Id.) In one incident, Defendant Phillips was told by a correctional officer that "[t]he inmates on D-Yard will get their religious packages when they stop raping babies." (Id.)

Plaintiff seeks to have this environment of fear lifted and Muslims be allowed to worship without fear of being punished, hindered, labeled, or called names. Plaintiff would also like his items to be returned and for the staff to act professionally. Plaintiff asks for punitive and monetary damages in excess of $100,000. Plaintiff asks to be allowed to practice his religion without fear or hindrance, to be provided with a lawyer, and for monetary and punitive damages against Defendants in excess of $100,000.

## III. ANALYSIS

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

### A. First Amendment

#### 1. Free Exercise of Religion

Plaintiff alleges that PVSP's investigation of Muslim inmates, removal of religious items from Muslim inmates' cells, denial of chapel access, and failure to provide them with required meals constitute violations of his First Amendment right to freedom of religion.

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979). Only beliefs which are both sincerely held and rooted

in religious beliefs trigger the Free Exercise Clause. Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008) (citing Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994)); Callahan v. Woods, 658 F.2d 679, 683 (9th Cir. 1981)). Restrictions on access to "religious opportunities"-whether group services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Plaintiff's pleadings raise the specter of an environment at PVSP that may well create significant constitutional concern on the part of the Court. However, the Court is unable to distill from the laundry list of allegations sufficient facts to support a cognizable Free Exercise Clause claim. Plaintiff's allegations throughout his complaint are overly broad. Plaintiff's myriad claims include: Defendant McCoy is using informants to spy on Muslims and Defendant FBI is collecting this information; Defendant Yates allowed books to be removed from Muslim inmates' cells and placed in common areas; Defendant Mills allowed items to be removed and also lead an investigation; Defendants Ward, Mendenhall, Mendoza searched Plaintiff's cell; Defendant Salam provided religious CDs that later were confiscated; Defendant Arrodando's questioned other inmates about Plaintiff, denied him chapel access, and called him names; Defendant Smith denied him

chapel access and called him names; and Defendants Myers and Philips denied him religious meals.  These allegations are so overly broad and general that the Court is unable to determine whether they represent simply inappropriate and/or distasteful behavior by individuals with no legitimate penological objective. Although the Court might infer that the acts in general discourage him from professing his faith or make the expression of his faith difficult, Plaintiff does not enlighten how any one or all of the acts impact his rights under the First Amendment or why and how they were less than reasonable when analyzed in light of the four factors set forth above. An environment of antagonism

 towards Muslims in a prison environment, though distasteful and contrary to this country's principals, does not in and of itself to create a cognizable First Amendment claim.

      Plaintiff will be given leave to amend this claim.  In his amended complaint, Plaintiff must explain how Defendants' actions fell outside of the factors discussed above and impacted Plaintiff's sincerely held religious beliefs. It is not sufficient to present a summary of every offense  that officials at PVSP have directed against Muslim prisoners and then simply say, as he has done here, that the Defendants have thereby violated his First Amendment rights.  He must explain what sincerely beliefs have been affected by Defendants' actions and how Defendants' actions directly encroached on his religious life. Plaintiff must tie each Defendant to the alleged wrong that he or she committed against Plaintiff's right to freely exercise his religious beliefs.  Plaintiff must also analyze those actions in light of the four factors justifying restrictions on access to religious opportunities. Plaintiff needs to explain whether or not there was a rational connection between the regulations and the governmental interests put forth to justify it, whether Muslim inmates

had an alternative means of exercising the rights at issue, whether accommodating the rights at issue would impact guards or other inmates, or whether ready alternatives were available.

### 2. Retaliation

Plaintiff alleges that Defendants also violated his First Amendment rights because they prevented Muslim inmates from worshiping by threatening them with retaliation. According to Plaintiff, he and other inmates at D-Yard at PVSP cannot worship under the conditions at PVSP because they are afraid of retaliation. Inmates are afraid of being labeled terrorists, having their families questioned, their personal religious items removed from their cells, and being placed on watch-lists.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (quotation marks omitted); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff's conclusory allegations that Defendants retaliated against him are insufficient as there are no facts supporting the existence of a retaliatory motive. A bare allegation of retaliation is insufficient to support a plausible claim for relief. Iqbal, 129 S. Ct. at 1949–50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). In actuality, it appears that Plaintiff is in fact complaining because he fears he may suffer retaliation because of what he perceives to be an anti-Muslim environment, Plaintiff has failed to

identify an unjustified act of retaliation based upon Plainitff's exercise of his religious rights. He has failed to state a claim for retaliation under the First Amendment. Plaintiff will be given leave to amend this claim.

In his amended complaint, Plaintiff should name the individual Defendants responsible for specified retaliation against him. He should also explain how the five prerequisites for a retaliation claim have been pled.

### B. Eighth Amendment

Plaintiff alleges that he was subject to cruel and unusual punishment under the Eighth Amendment as a result of Defendant McCoy and PVSP's policy of using inmate informants to gather information on Muslim inmates and send this information to the FBI.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

Plaintiff has failed to state a claim for cruel and unusual punishment. Plaintiff has neither alleged a deprivation that was "sufficiently serious" nor has he identified a prison official with a "culpable state of mind". Plaintiff claims that he and other Muslim inmates have had informers report on them, but these allegations are ambiguous and he cannot point to any specific instances where he was subject to such a report and faced consequences as a result. Plaintiff suggests that are Defendants McCoy, Arrodando, and Mills seemed to have improper and thus culpable motives, but he does not identify a basis

for his conclusion. Plaintiff has not stated a claim for cruel and unusual punishment under the Eighth Amendment. Plaintiff will be given leave to amend this claim.

### C. RLUIPA

Plaintiff also makes a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1). Plaintiff bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). A "substantial burden" is one that is "oppressive to a significantly great extent." Id. at 995 (internal quotations omitted). It "must impose a significantly great restriction or onus upon [religious] exercise." Id. (quotations omitted). A substantial burden includes situations "where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief." Id.

If a plaintiff meets this burden, the defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Plaintiff has alleged that he was prevented from keeping several religious items, attending services on certain days, maintaining a religious diet, and subjected to cell searches. Plaintiff has not explained how these activities subjected him to a substantial burden on the exercise of his religious beliefs. He has referred to various sections of the Koran as evidence of his religious beliefs, but fails to relate them to any wrong committed by Defendants. It is possible that a general anti-Muslim milieu at PVSP propagated by named defendants could give rise to a claim under RLUIPA, but to assert such a claim Plaintiff needs to further describe Defendants' actions and explain how they substantially and unjustifiably burdened his religious beliefs.

Plaintiff has failed to state a claim under RLUIPA. He will be given leave to amend this claim. In his amended complaint, Plaintiff should identify the substantial burden imposed upon the practice of his religion, how and why it was such a substantial burden, whether it was in furtherance of a compelling interest, whether it was implemented in the least restrictive means, and which Defendants were responsible for it and how and why they were responsible.

### D.  Claims Against Defendants Nash and Salam

Under Section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S. Ct. at 1949–50; Moss, 572 F.3d at 969. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

The statute clearly requires that there be an actual connection or link between the actions of the defendants and the unconstitutional deprivation alleged to have been

suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Iqbal, 129 S. Ct. at 1948.  Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions.  Id. at 1948.  In other words, to state a claim for relief under Section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff does not mention how Defendants Nash and Salam participated in any alleged violation of Plaintiff's rights.  Defendant Nash is not even mentioned in the body of the Complaint.  Plaintiff alleges Defendant Salam was at fault because he gave Plaintiff religious CDs that were later taken away by other parties.  As pled, Plaintiff's Complaint does not state a claim against Defendants Nash or Salam.

## IV.    **CONCLUSION**

Plaintiff's Complaint fails to state a claim upon which relief may be granted under section 1983.  The Court will provide Plaintiff with the opportunity to amend to cure the deficiencies in his claim.  Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 129 S. Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be

[sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Plaintiff's Complaint, filed February 17, 2010, is dismissed for failure to state a claim upon which relief may be granted under section 1983;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   January 16, 2012              /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE

[sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Plaintiff's Complaint, filed February 17, 2010, is dismissed for failure to state a claim upon which relief may be granted under section 1983;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   January 16, 2012              /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE